# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| United States of America *ex rel.* **WALTER BLOUNT,** | ) ) ) | |
| Petitioner, | ) ) | |
| vs. | ) ) | **Case No. 04 C 4007** |
| **KENNETH R. BRILEY, Warden Stateville Correctional Center,** | ) ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Walter Blount has petitioned the Court under 28 U.S.C. § 2254 for a writ of habeas corpus. Blount was convicted under an accountability theory of first degree murder, attempted murder, and aggravated battery with a firearm, and he was sentenced to sixty-five years in prison. He contends that he was denied effective assistance of counsel at trial and on direct appeal and that his Sixth Amendment right to confront a witness was violated. The Court reviews Blount's ineffective assistance of counsel claims under AEDPA and concludes that the state appellate court's determination that Blount was not denied effective assistance of counsel was not contrary to or an unreasonable application of federal law and was not based on an unreasonable determination of the facts. After reviewing Blount's Confrontation Clause claim *de novo*, we find that Blount was not denied his right to confront a witness. The Court therefore denies Blount's petition.

1

## Facts

On April 8, 1999, following a jury trial in the Circuit Court of Cook County, Blount was convicted of first degree murder, attempted murder, and aggravated battery with a firearm. He was sentenced to consecutive prison terms of forty-five years for first degree murder and twenty years for attempted murder. Blount was convicted under an accountability theory for his role in a gang-related drive-by shooting that occurred on July 9, 1997. In Illinois, a person is legally accountable for another's criminal conduct when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." 720 ILCS 5/5-2(c).

The following recitation of the facts is taken from the Illinois Appellate Court's decision affirming the denial of Blount's post-conviction petition. *People v. Blount*, No. 1-02-0234 (Ill. App. Nov. 26, 2002). According to Brian Holmes, an accomplice who testified against Blount at trial, Blount, Holmes, Marcus Blackwell, and KeShawn Huston, all members of a street gang known as the Four Corner Hustlers, drove from Maywood to Chicago on July 9th and rode around the city for several hours before returning to Maywood. At approximately 9:30 p.m., the group ran into Brian Moore, another member of the Four Corner Hustlers, and pulled over to talk with him. Holmes testified that Moore told the group that he had been shot at by members of the Black P-Stone gang. Upon hearing this news, the group already in the car proceeded to 16th and Randolph Streets, where Blackwell had stashed a .380 caliber semi-automatic handgun in the bushes. Blackwell retrieved the gun, and with Blount driving and Blackwell in the front

2

passenger seat, they drove to territory of the Black P-Stones.

Holmes testified that Blount drove the car past the intersection of 19th and Van Buren Streets three or four times and then circled around for an additional pass. On the final pass, Holmes stated, Blount slowed down the vehicle in the middle of the intersection and remarked, "I think that's them," referring to a crowd of people on the east side of the street. The crowd consisted of between nine and twenty youths who were standing in front of Mary Harris' home located at 1608 South 19th Street. According to Holmes, Blackwell stuck his arm outside the vehicle and fired between four and six shots at the crowd. After the shooting, the car purportedly sped off at approximately forty miles per hour. Blackwell's shots critically injured Cary Rouse, an eighteen-year-old who was part of the crowd, and killed Harris, who at the time of the shooting was outside attempting to shoo the youths away from her home.

John Mazariegos, a Maywood police officer, testified that at approximately 11:20 p.m., he received a call informing him that shots had been fired and describing three black males driving a red Chevrolet hatchback as the possible offenders. Kecia Williams, Nayania Poole, and Antoinette Hughes testified that prior to the shooting, at approximately 11:15 p.m., they had been standing with the crowd in front of Harris' house. When Harris asked the group to leave, the girls walked west down Van Buren Street and turned north onto 11th Street. Williams testified that approximately fifteen minutes after leaving Harris' house, she saw a burgundy Chevrolet Citation traveling northbound on 11th Street. Hughes corroborated the identification of the vehicle in her testimony. The vehicle approached the girls at a slow speed. All three girls identified Blount as the driver. Williams and Hughes testified that Holmes was riding in the back seat. Hughes stated that she asked Blount for a ride home, but he just smiled and drove

3

away.

Mazariegos searched for a vehicle fitting the description he had been given until the morning of July 10, 1997. He finally observed the vehicle in the area of 9th Avenue and Randolph Street and began pursuit. He testified that when the vehicle was approximately one block ahead of him, the doors opened, and three black males jumped out while the car was still moving. Though Mazariegos was unable to apprehend any of the subjects, the abandoned vehicle was confirmed to be a burgundy Chevrolet Citation. Eventually, Blount, Holmes, and Blackwell were apprehended.

Williams, Poole, and Hughes later identified Blount in a police lineup as the driver of the vehicle on the night of the shooting. Williams and Hughes identified Holmes as a back seat passenger in the car. While in custody at Maywood police station, Holmes gave the police a statement about what had happened the night of the shooting. Later that day, Holmes was also questioned by Mary Pat Devereaux, an Assistant State's Attorney. According to Holmes, he was not promised anything for making either of these statements. Tr. C-72. (Later, after being charged with first degree murder, Holmes accepted a reduced sentence in exchange for his testimony against Blount and Blackwell. Holmes was convicted of aggravated battery with a firearm and sentenced to six years in prison.)

The defense called only two witnesses, Blount's mother and his great aunt, but neither testified that she knew where defendant was at the time of the shooting. The jury convicted Blount of first degree murder, attempted murder, and aggravated battery with a firearm.

Blount's conviction and sentence were affirmed by the Appellate Court on direct appeal. He filed a petition for post-conviction relief, but the trial court summarily denied the petition

4

without hearing. The Appellate Court affirmed the trial court's ruling. *People v. Blount*, No. 1-02-0234 (Ill. App. Nov. 16, 2002).

On June 14, 2004, Blount filed a petition for a writ of habeas corpus. The petition appears to include three claims. First, Blount contends that the Appellate Court's determination that trial and appellate counsel were not ineffective for failing to request an accomplice-witness instruction concerning Holmes' testimony was contrary to and an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984), and that it was based on an unreasonable determination of the facts. Second, Blount argues that the Appellate Court's ruling that trial counsel was not ineffective in failing to request a jury instruction regarding the significance of Holmes' purported prior inconsistent statements was contrary to or an unreasonable application of federal law. Third, Blount maintains that the Appellate Court's conclusion that his Sixth Amendment right to confront a witness was not violated by the trial court's admission of Holmes' prior consistent statements concerning the events of the shooting was contrary to and an unreasonable application of federal law and was based on an unreasonable determination of the facts.

## Discussion

A petitioner is entitled to a writ of habeas corpus if he is being held under a state court judgment obtained in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Under the 1996 amendments to § 2254, a federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted

5

in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Id.* § 2254(d)(1) & (2).

### a.    Counsel's Failure to Request an Accomplice-Witness Instruction

Blount contends that the Appellate Court's rejection of his ineffective assistance of counsel claim based on trial counsel's failure to request an accomplice-witness instruction and appellate counsel's failure to raise this issue on direct appeal was contrary to and an unreasonable application of Supreme Court precedent. Blount maintains that trial counsel should have requested the court to read Illinois Pattern Jury Instructions, Criminal No. 3.71 (4th ed. 2000), which provides: "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case." *See Blount*, slip op. at 19.

A federal court may grant relief under the "contrary to" provision of § 2254(d)(1) if the state court applied a rule different from that set forth in the Supreme Court's cases or decided the case differently than the Supreme Court has done on materially indistinguishable facts. Relief may be obtained under the "unreasonable application" provision of § 2254(d)(1) if the state court correctly identified the governing legal principle from Supreme Court decisions but applied it unreasonably. *Bell v. Cone*, 535 U.S. 685 (2002); *Williams v. Taylor*, 529 U.S. 362, 405-10 (2000). "Such application must be objectively unreasonable, which is different from incorrect." *Id.* Under § 2254(e)(1), the petitioner bears the burden of showing by clear and convincing evidence that the state court's factual determinations were unreasonable. *Sanders v. Cotton*, 398 F.3d 572, 584 (7th Cir. 2005).

6

The Appellate Court correctly identified *Strickland* as the governing precedent of the ineffective assistance of counsel claims. Blount, however, contends that the court applied a stricter standard for the prejudice inquiry than *Strickland* prescribes. To prevail on an ineffective assistance of counsel claim, the defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and caused the defendant prejudice sufficient to deprive him of a fair trial. *Strickland*, 466 U.S. at 687-88. *Strickland* dictates that to prove prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A court need not analyze whether counsel's acts or omissions were deficient if the claim can be disposed of on the ground that the defendant was not sufficiently prejudiced by the alleged error. *Id.* at 697.

Blount complains that the following passage reflects that the Appellate Court applied a stricter standard than required:

> "A defendant who contends that appellate counsel rendered ineffective assistance, for example by failing to argue a particular issue, must show that 'the failure to raise that issue was objectively unreasonable' and that, 'but for this failure, his sentence or conviction would have been reversed.'" *People v. Flores*, 153 Ill. 2d 264, 283, 606 N.E. 2d 1078 (1992).
> Defendant cannot show that but for the failure to raise trial counsel's error in requesting an accomplice-witness instruction, his sentence or conviction would have been reversed. Therefore we reject this argument.

*Blount*, slip op. at 23. According to Blount, by neglecting to include the "reasonable probability" language of *Strickland*, the court required definite proof that a different result would occur, which is more than Blount actually needed to show. Because this passage applies only to the court's analysis of Blount's ineffective assistance of counsel claim concerning appellate counsel,

7

our discussion is limited to this claim and does not extend to the alleged ineffectiveness of trial counsel.

Citing the relevant *Strickland* passage, the Appellate Court set forth the correct "reasonable probability" criterion for the prejudice inquiry at the beginning of its decision when it addressed Blount's first ineffective assistance of counsel claim–trial counsel's failure to object when Holmes' testified about his prior consistent statements to police. *See id.* at 9. It again reiterated the correct standard later during the same discussion. *Id.* at 15. Moreover, the court properly framed the issue when it defined reasonable probability as a "probability sufficient to undermine confidence in the outcome." *Id.* at 9.

Viewing the Appellate Court's decision as a whole, it is obvious that the court was familiar with *Strickland's* tenets and applied them to Blount's case. The most reasonable interpretation of the court's decision is that the passage Blount cites in which the court omits the phrase "reasonable probability" amounts to a shorthand reference to the *Strickland* standard the court had previously articulated in detail, rather than an indication of a repudiation of the standard. *See Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2002) (holding that state court's occasional shorthand reference to the *Strickland* standard by use of the term "probable" without the modifier "reasonable" may perhaps be imprecise, but is not a repudiation of the standard). Moreover, Blount's "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Id.* at 24. The Court therefore rejects Blount's argument that the Appellate Court applied a stricter standard than *Strickland* commands. To hold otherwise would be incompatible with § 2254(d)'s "highly deferential standard for evaluating state-court rulings." *Id.* (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)).

Blount next contends that the Appellate Court's determination that Blount was not prejudiced by trial counsel's failure to seek an accomplice-witness instruction involved an unreasonable application of *Strickland* and was based on an unreasonable determination of the facts in light of the evidence. Specifically, Blount maintains that the Appellate Court unreasonably concluded that there was overwhelming evidence of guilt and that Blount was therefore not prejudiced by trial counsel's failure to submit the instruction. Blount argues that the Appellate Court should have excluded Holmes' testimony from its analysis when evaluating whether the evidence was overwhelming. He also suggests that the Appellate Court unreasonably concluded that Holmes' prior inconsistent statements were not material to Blount's guilt. Instead, he claims that these prior inconsistent statements and omissions impeached Holmes' testimony, thereby diminishing his credibility and running counter to the Appellate Court's determination that the evidence against Blount was overwhelming.

A petitioner must clear a high bar to establish that a state court's application of the *Strickland* standard was "unreasonable." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003). A court may grant a writ of habeas corpus only if there exists "a clear error" in the state court's application of *Strickland*. *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997). This is true because "'*Strickland* calls for inquiry into degrees,' thereby 'add[ing] a layer of respect for a state court's application of the legal standard.'" *Murrell*, 332 F.3d at 1111 (quoting *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001)).

Under this deferential standard, we cannot conclude that the Appellate Court's holding that Blount was not prejudiced by trial counsel's failure to submit an accomplice-witness instruction was an unreasonable application of *Strickland*. The Appellate Court reached its

9

conclusion after engaging in an inquiry into the totality of the circumstances. It emphasized that Holmes' testimony was corroborated by the testimony of Williams, Poole, and Hughes. The court also highlighted the fact that the jury was instructed to consider the reliability of every witness, including Holmes, in light of numerous pertinent factors,[1] and that the jury was made aware of the plea agreement Holmes had entered into with the state. It likewise found that Blount had received a fair trial.

The Appellate Court's conclusion was consistent with the facts and circumstances of the case. This Court rejects Blount's argument that the Appellate Court should have left out Holmes' testimony when evaluating whether Blount had been prejudiced by his counsel's inaction. Blount has cited no authority for this proposition, and the Court does not find it persuasive given that the issue is not whether Blount should have been allowed to testify, but rather whether an instruction should have been requested regarding the weight to be given to his testimony. Though Williams, Poole, and Hughes' testimony that Blount was driving the car near the time and place of the shooting did not establish that Blount had the intent required to be convicted under an accountability theory, their testimony certainly corroborated Holmes' testimony. Moreover, Holmes' potential biases and motives were brought to the attention of the jury while he was on the stand and in closing argument, *see* Tr. at C-48-51, E-32-33, and the jury was instructed that it could take into account any interest or bias of testifying witnesses.

---

[1] The instruction stated in pertinent part,

> Only you are the judges of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his age, his memory, his manner while testifying, any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in light of all the evidence in the case.

*See* Illinois Pattern Jury Instructions, Criminal No. 1.02 (4th ed. 2000).

Furthermore, as will be elaborated in the following section, the Appellate Court reasonably concluded that Holmes' purported prior inconsistencies and/or omissions were immaterial to Blount's guilt and thus did not affect the weight of the evidence against Blount.

Blount places a heavy emphasis on the Appellate Court's conclusion that the evidence against Blount was overwhelming, a conclusion that he argues was incorrect. A determination that the evidence was overwhelming was not required, however, to determine that Blount was not prejudiced by counsel's failure to tender the instruction. The Appellate Court cited a rule set forth in *People v. Campbell*, 275 Ill. App. 3d 993, 996-97, 657 N.E. 2d 87, 91 (1995), and concluded that because the evidence against Blount was overwhelming, the lack of an accomplice instruction was harmless in light of other instructions given, counsel's arguments, and a generally fair trial. This rule is used to determine whether the instruction should have been read to the jury,[2] but it should not be conflated with the *Strickland* inquiry. Regardless of whether we agree with the Appellate Court's assessment that the evidence against Blount was overwhelming, we do not think it was unreasonable for the court to conclude that Blount had not shown a reasonable probability that the outcome would have been different but for trial counsel's failure to submit an accomplice-witness instruction. Thus, even if defense counsel was deficient in failing to request the instruction, we cannot say that it was clear error, *see Holman*, 126 F.3d at 882, for the Appellate Court to conclude that Blount was not prejudiced by this error.

As previously discussed, the Appellate Court also applied the *Strickland* standard to

---

[2] This is not the issue before the Court. If it were, this claim would not be subject to habeas review. "Although cautionary 'accomplice' instructions are preferred in the federal courts, the failure of a state court to give such an instruction does not rise to the level of a constitutional violation." *Kappos v. Hanks*, 54 F.3d 365, 367 (7th Cir. 1995) (citations omitted).

Blount's claim that appellate counsel was ineffective for failing to raise, on direct appeal, trial counsel's deficiency in not requesting an accomplice-witness instruction. The court concluded that Blount had not shown that but for appellate counsel's failure to raise this issue, his sentence or conviction would have been reversed, thus no prejudice had occurred. The Court cannot say that the Appellate Court's conclusion was unreasonable. For the same reasons that the underlying claim with regard to the conduct of trial counsel is meritless, there is not a reasonable probability that the outcome of the appeal would have been different had appellate counsel raised the issue. *See Martin*, 384 F.3d at 852 (7th Cir. 2004).

### b. Counsel's Failure to Request an Instruction Regarding Holmes' Prior Inconsistent Statements

It is unclear whether Blount raises trial counsel's failure to request a jury instruction concerning Holmes' prior inconsistent statements as a separate ground for relief or whether he is simply using Holmes' purported impeachment with inconsistent statements to bolster his argument that the evidence against Blount was not overwhelming and that he was therefore prejudiced by trial counsel's failure to submit an accomplice instruction. Blount mentions defense counsel's failure to request a prior inconsistent statement instruction almost as an afterthought.[3] Though it is questionable whether Blount presents an argument sufficient to preserve the claim, we give him the benefit of the doubt and analyze this claim as a separate ground for relief.

---

[3] In his petition, Blount states, "Furthermore, the prejudice to defendant was enhanced when defense counsel failed to have the jury instructed how to consider the prior inconsistent statement of Holmes." Petition at 14. A few pages later under the heading "The Appellate Court applied the wrong standard to determine whether trial and appellate counsel rendered ineffective assistance of counsel," he argues that the court's determination with respect to trial counsel's failure to request an instruction on the prior inconsistent statements was contrary to or an unreasonable application of federal law because the failure to obtain the instruction "negated the defense argument attacking Holmes' credibility" and that this prejudiced Blount. *Id.* at 17-18.

The inconsistencies to which Blount refers involve purported omissions in Holmes' initial statement to police and his statement to the Assistant State's Attorney Devereaux. First, Blount claims that Holmes never mentioned Moore's name or the retaliation motive in his initial statement to the police. Second, in his statement to the police, Holmes did not reveal that the men drove to get a gun out of a bush in an alley. Third, he did not tell police or Devereaux that his friend, Huston, was in the car. Fourth, Holmes failed to tell the police or Devereaux that the group went driving in Chicago for approximately nine hours on the day of the shooting and that Blount was present. Fifth, he did not mention to the police that Blount entered the car around noon on the day of the shooting. And last, Holmes did not tell the police that just before the shooting, Blount stated, "I think that's them," referring to the Black P-Stone gang members who had allegedly shot at Moore.

The Illinois pattern jury instruction regarding prior inconsistent statements provides:

> The believability of a witness may be challenged by evidence that on some former occasion he made a statement that was not consistent with his testimony in this case. Evidence of this kind [ordinarily] may be considered by you only for the limited purpose of deciding the weight to be given the testimony you heard from the witness in this courtroom.

Illinois Pattern Jury Instructions, Criminal No. 3.11 (4th ed. 2000). This instruction is "appropriately given only where two statements are inconsistent on a material matter." *People v. Finke*, 204 Ill. App. 3d 748, 759, 562 N.E.2d 630, 639 (1990). Materiality of an inconsistent statement exists if the "contradiction reasonably tends to discredit the testimony of the witness on a material matter." *Id.*

The Appellate Court concluded that Holmes' first five statements were immaterial to Blount's guilt or innocence and that Holmes' testimony regarding Blount's purported statement

13

"I think that's them" was consistent with his statement to Devereaux made the same day as his statement to police. Applying *Strickland*, the court concluded that trial counsel was not ineffective for failing to submit an instruction regarding inconsistent statements and that even if he was, Blount had not been prejudiced.

The Appellate Court's conclusion was not contrary to or an unreasonable application of *Strickland*. Four of the alleged omissions from the prior statements were, at most, relatively insignificant details; the Appellate Court reasonably found they were collateral facts that are immaterial to Blount's guilt or innocence. This Court disagrees with the Appellate Court's assessment that Holmes' statement involving Moore and the motive for the crime was immaterial; however, Holmes revealed this information to Devereaux, and thus his trial testimony was consistent with this earlier statement. Holmes' meeting with Devereaux occurred the same day as his questioning by police, and according to Holmes, it involved a longer and more detailed interrogation than the questioning by police. In sum, the Appellate Court reasonably concluded that trial counsel was not ineffective for failing to tender an instruction regarding inconsistent statements and that Blount had not been prejudiced by this omission.

### c. Admission of Holmes' Prior Consistent Statements

Blount contends that his Sixth Amendment right to confront a witness was violated when the trial court allowed the state to admit evidence of Holmes' prior consistent statements to corroborate his trial testimony. Specifically, during its opening, the State remarked that Holmes' testimony would be consistent with the statements he had provided to police. Additionally, while Holmes was on the stand, the prosecutor questioned him about whether his testimony at trial was the same as what he had previously told Devereaux.

14

The Appellate Court determined that the statements were properly admitted under an exception to Illinois' rule against admitting prior consistent statements. The exception allows a party to rebut a charge of recent fabrication by introducing a witness's prior consistent statements, so long as those statements were made before the motive to fabricate arose. *See People v. Heard*, 187 Ill.2d 36, 69, 718 N.E.2d 58, 77 (1999). The Appellate Court reasoned that Holmes' motive to fabricate arose when he was offered a plea agreement, which was after he made his statements to the police and Devereaux.[4] It relied on *People v. Schutz*, 201 Ill. App. 3d 154, 160-61, 559 N.E.2d 289, 294 (1990), which held that a statement made to police after an arrest that was not premised on any promises from authorities is admissible as a prior consistent statement if the plea agreement that was the basis for the alleged inference of a recent fabrication was entered into months later. The Appellate Court therefore rejected Blount's argument that the motive to lie arose at the time of the arrest, when Holmes would have been motivated to shift the blame to Blount. Blount contends that this holding was contrary to or involved an unreasonable application of clearly established federal law and that it was based on an unreasonable interpretation of the facts.

The AEDPA standard discussed above applies only if the state court addressed the federal constitutional claim on the merits. *See Dye v. Frank*, 355 F.3d 1102, 1107 (7th Cir. 2004) (citing *Moore v. Parke*, 148 F.3d 705, 708 (7th Cir. 1998)). If the state court did not address the claim on the merits, the pre-AEDPA standard applies, under which we "presume that questions of fact decided by the state court are correct, while questions of law or mixed questions of law and fact

---

[4] The Appellate Court noted that defense counsel had used the plea agreement to argue that Holmes was not believable. Blount does not contest that there was a charge of recent fabrication.

are reviewed *de novo*." *Id.* (internal citations omitted). The Appellate Court addressed the prior consistent statements issue in terms of Illinois evidence law and did not explicitly evaluate the related constitutional claims. Because it is unclear whether the federal claim was adjudicated on the merits, the Court will exercise caution and assume the pre-AEDPA *de novo* standard of review applies. *See Harris v. Hinsley*, No. 04 C 1263, 2004 WL 1879056, at *10 (N.D. Ill. Aug. 17, 2004).

When evaluating a habeas petition, the evidentiary rulings of state courts are not subject to review unless a specific constitutional right has been violated or error has rendered the trial fundamentally unfair. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757 (7th Cir. 1976); *United States ex rel. Gonzalez v. DeTella*, 918 F. Supp. 1214, 1222 (N.D. Ill. 1996). It is well established that the Confrontation Clause is not violated when a witness's prior statement is admitted at trial, so long as that witness is testifying and subject to full and effective cross-examination. *California v. Green*, 399 U.S. 149, 157-58 (1970); *U.S. v. Baker*, 722 F.2d 343, 347 (7th Cir. 1983). Holmes was subject to full and effective cross-examination at trial, thus the Confrontation Clause is not implicated.

Furthermore, Blount has failed to show that the admission of Holmes' prior consistent statements was an error of such magnitude as to render his trial fundamentally unfair. To entitle a habeas petitioner to relief, an erroneous evidentiary ruling "must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial." *Howard v. O'Sullivan*, 185 F.3d 721, 723-24 (7th Cir. 1999). This occurs only when "the error . . . produced a significant likelihood that an innocent person has been convicted." *Id.* Blount has not demonstrated that the admission of the prior statements was erroneous, much less that it

16

prejudiced him in the manner required.

The Appellate Court's ruling that Holmes' motive to fabricate did not arise until he was offered a plea agreement was a reasonable interpretation of the facts in light of Illinois law *See Schutz*, 201 Ill. App. 3d at 160-61, 559 N.E.2d at 294. Moreover, "[w]here the statement in question antedates a defendant's negotiation for immunity or plea bargain, the statement is relevant and properly admissible even if it was made when the defendant had reason to fear criminal or civil liability." *DeTella*, 918 F. Supp. at 1222 (citing *United States v. Casoni*, 950 F.2d 893, 904-05 (3d Cir. 1991)). And even were the Court to consider the admission of the prior statements erroneous, we could not conclude that Blount was prejudiced in the manner required to give rise to a viable claim in habeas review.

Blount also argues that an evidentiary hearing should have been held in the trial court to determine when Holmes developed a motive to lie and that because no such hearing was held, the Appellate Court had no factual basis for its finding. Citing *Washington v. Texas*, 288 U.S. 14 (1967), Blount contends that his constitutional right to present evidence was denied. Blount does not explain why a separate evidentiary hearing was necessary or why defense counsel would have been unable to establish the basis for Holmes' testimony during cross-examination at trial. The Appellate Court's finding, and this Court's similar conclusion, are supported by the record.

In sum, the trial court's admission of Holmes' prior consistent statements did not violate any of Blount's constitutional rights.

## Conclusion

For the reasons stated above, the Court denies Blount's petition for a writ of habeas

17

corpus. The Clerk is directed to enter judgment in favor of respondent.

MATTHEW F. KENNELLY
United States District Judge

Date: April 15, 2005